ORIGINAL
**United States District Court**
**Central District of California**

**UNITED STATES OF AMERICA vs.**

Docket No.    CR02-00220(B)-SJO

**Defendant**    **MARKOVSKIS, Aleksejus**

akas:   unknown

Social Security No.   x   x   x   x

(Last 4 digits)

## JUDGMENT AND PROBATION/COMMITMENT ORDER

In the presence of the attorney for the government, the defendant appeared in person on this date.

| MONTH | DAY | YEAR |
|---|---|---|
| Jan. | 17, | 2008 |

| **COUNSEL** | [x] **WITH COUNSEL** | Terrence J. Bennett, appointed |
|---|---|---|
| | | (Name of Counsel) |

**PLEA**   [x] **GUILTY,** and the court being satisfied that there is a factual basis for the plea. [ ]   **NOLO CONTENDERE**    [ ]   **NOT GUILTY**

**FINDING**   There being a finding/verdict of [x] **GUILTY,** defendant has been convicted as charged of the offense(s) of:
**18 USC § 1203 - CONSPIRACY TO TAKE HOSTAGES RESULTING IN DEATH AS CHARGED IN COUNT ONE OF THE SECOND SUPERSEDING INDICTMENT; 18 USC § 1203 - HOSTAGE TAKING RESULTING IN DEATH AS CHARGED IN COUNTS THREE AND FOUR OF THE SECOND SUPERSEDING INDICTMENT;**

**JUDGMENT AND PROB/ COMM ORDER**   The Court asked whether defendant had anything to say why judgment should not be pronounced. Because no sufficient cause to the contrary was shown, or appeared to the Court, the Court adjudged the defendant guilty as charged and convicted and ordered that: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of:

It is ordered that the defendant shall pay to the United States a special assessment of $200, which is due immediately to the Clerk of the Court.

It is ordered that the defendant shall pay restitution pursuant to 18 U.S.C. § 3663A.

It is ordered that the defendant shall pay restitution in the total amount of $710,245.00 pursuant to 18 U.S.C. § 3663A.

The amount of restitution ordered shall be paid as follows:

| Victim | Amount |
|---|---|
| George Safiev c/o Konstantinos Tezhik | $710,245.00 |

Restitution shall be due during the period of imprisonment, at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program. If any amount of the restitution remains unpaid after release from custody, nominal monthly payments of at least $50 shall be made during the period of supervised release. These payments shall begin 30 days after the commencement of supervision. Nominal restitution payments are ordered as the court finds that the defendant's economic circumstances do not allow for either immediate or future payment of the amount ordered.

The defendant shall be held jointly and severally liable with co-participants Iouri Mikhel, Jurijus Kadamovas,

USA vs.  **MARKOVSKIS, Aleksejus**                    Docket No.:    **CR02-00220(B)-SJO**

Petro Krylov, Natalya Solovyeva, and Ainar Altmanis (Docket No. CR02-00220) for the amount of restitution ordered in this judgment.

Pursuant to 18 U.S.C. § 3612(f)(3)(A), interest on the restitution ordered is waived because the defendant does not have the ability to pay interest.  Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The defendant shall comply with General Order No. 01-05.

All fines are waived as it is found that the defendant does not have the ability to pay.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Aleksejus Markovskis, is hereby committed on counts one, three, and four of the second superseding indictment to the custody of the Bureau of Prisons to be imprisoned for a term of 180 months.  This term consists of 180 months on each of counts one, three and four of the second superseding indictment, to be served concurrently.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years. This terms consists of five years on each of counts one, three and four of the second superseding indictment, to be served concurrently under the following terms and conditions:

1.  The defendant shall not commit any violation of local, state or federal law or ordinance.

2.  The defendant shall comply with the rules and regulations of the U. S. Probation Office and General Order 318;

3.  During the period of community supervision the defendant shall pay the special assessment and restitution in accordance with this judgment's orders pertaining to such payment;

4.  The defendant shall comply with the immigration rules and regulations of the United States, and if deported from this country, either voluntarily or involuntarily, not reenter the United States illegally.  The defendant is not required to report to the Probation Office while residing outside of the United States; however, within 72 hours of release from any custody or any reentry to the United States during the period of Court-ordered supervision, the defendant shall report for instructions to the United States Probation Office, located at the United States Court House, 312 North Spring Street, Room 600, Los Angeles, California  90012;

5.  The defendant shall cooperate in the collection of a DNA sample from the defendant; and

6.  As directed by the Probation Officer, the defendant shall apply monies received from income tax refunds, lottery winnings, inheritance, judgments and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation.

The drug testing condition mandated by statute is suspended based on the Court's determination that the

USA vs.   **MARKOVSKIS, Aleksejus**                                    Docket No.:   **CR02-00220(B)-SJO**

defendant poses a low risk of future substance abuse.

The Court advises the defendant of his right to appeal and his right to appeal in forma pauperis.

The Court orders that a copy of the transcript from this proceeding be attached to this judgment and commitment order.

In addition to the special conditions of supervision imposed above, it is hereby ordered that the Standard Conditions of Probation and Supervised Release within this judgment be imposed.  The Court may change the conditions of supervision, reduce or extend the period of supervision, and at any time during the supervision period or within the maximum period permitted by law, may issue a warrant and revoke supervision for a violation occurring during the supervision period.

| January 17, 2008 | /S/  S. James Otero |
|---|---|
| Date | U. S. District Judge/Magistrate Judge |

It is ordered that the Clerk deliver a copy of this Judgment and Probation/Commitment Order to the U.S. Marshal or other qualified officer.

Sherri R. Carter, Clerk

| January 17, 2008 | By   /S/  Victor Paul Cruz |
|---|---|
| Filed Date | Deputy Clerk |

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

## STANDARD CONDITIONS OF PROBATION AND SUPERVISED RELEASE

While the defendant is on probation or supervised release pursuant to this judgment:

USA vs. **MARKOVSKIS, Aleksejus**          Docket No.:   **CR02-00220(B)-SJO**

1.  The defendant shall not commit another Federal, state or local crime;
2.  the defendant shall not leave the judicial district without the written permission of the court or probation officer;
3.  the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4.  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5.  the defendant shall support his or her dependents and meet other family responsibilities;
6.  the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7.  the defendant shall notify the probation officer at least 10 days prior to any change in residence or employment;
8.  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9.  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;
10. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
13. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to conform the defendant's compliance with such notification requirement;
15. the defendant shall, upon release from any period of custody, report to the probation officer within 72 hours;
16. and, for felony cases only: not possess a firearm, destructive device, or any other dangerous weapon.

 The defendant will also comply with the following special conditions pursuant to General Order 01-05 (set forth below).

## STATUTORY PROVISIONS PERTAINING TO PAYMENT AND COLLECTION OF FINANCIAL SANCTIONS

The defendant shall pay interest on a fine or restitution of more than $2,500, unless the court waives interest or unless the fine or restitution is paid in full before the fifteenth (15th) day after the date of the judgment pursuant to 18 U.S.C. §3612(f)(1). Payments may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g). Interest and penalties pertaining to restitution , however, are not applicable for offenses completed prior to April 24, 1996.

If all or any portion of a fine or restitution ordered remains unpaid after the termination of supervision, the defendant shall pay the balance as directed by the United States Attorney's Office. 18 U.S.C. §3613.

The defendant shall notify the United States Attorney within thirty (30) days of any change in the defendant's mailing address or residence until all fines, restitution, costs, and special assessments are paid in full. 18 U.S.C. §3612(b)(1)(F).

The defendant shall notify the Court through the Probation Office, and notify the United States Attorney of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay a fine or restitution, as required by 18 U.S.C. §3664 (k). The Court may also accept such notification from the government or the victim, and may, on its own motion or that of a party or the victim, adjust the manner of payment of a fine or restitution-pursuant to 18 U.S.C. §3664(k). See also 18 U.S.C. §3572(d)(3) and for probation 18 U.S.C. §3563(a)(7).

Payments shall be applied in the following order:

    1. Special assessments pursuant to 18 U.S.C. §3013;
    2. Restitution, in this sequence:
        Private victims (individual and corporate),
        Providers of compensation to private victims,
        The United States as victim;
    3. Fine;
    4. Community restitution, pursuant to 18 U.S.C. §3663(c); and
    5. Other penalties and costs.

USA vs.   **MARKOVSKIS, Aleksejus**                              Docket No.:   **CR02-00220(B)-SJO**

### SPECIAL CONDITIONS FOR PROBATION AND SUPERVISED RELEASE

As directed by the Probation Officer, the defendant shall provide to the Probation Officer: (1) a signed release authorizing credit report inquiries; (2) federal and state income tax returns or a signed release authorizing their disclosure and (3) an accurate financial statement, with supporting documentation as to all assets, income and expenses of the defendant.  In addition, the defendant shall not apply for any loan or open any line of credit without prior approval of the Probation Officer.

The defendant shall maintain one personal checking account.  All of defendant's income, "monetary gains," or other pecuniary proceeds shall be deposited into this account, which shall be used for payment of all personal expenses.  Records of all other bank accounts, including any business accounts, shall be disclosed to the Probation Officer upon request.

The defendant shall not transfer, sell, give away, or otherwise convey any asset with a fair market value in excess of $500 without approval of the Probation Officer until all financial obligations imposed by the Court have been satisfied in full.

These conditions are in addition to any other conditions imposed by this judgment.

---

### RETURN

I have executed the within Judgment and Commitment as follows:

Defendant delivered on _____ to _____

Defendant noted on appeal on _____

Defendant released on _____

Mandate issued on _____

Defendant's appeal determined on _____

Defendant delivered on _____ to _____

at _____ the institution designated by the Bureau of Prisons, with a certified copy of the within Judgment and Commitment.

United States Marshal

_____                    By _____
Date                                             Deputy Marshal

---

### CERTIFICATE

I hereby attest and certify this date that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

Clerk, U.S. District Court

By _____

USA vs.  **MARKOVSKIS, Aleksejus**                    Docket No.:   **CR02-00220(B)-SJO**

_____              _____
Filed Date                                              Deputy Clerk

### FOR U.S. PROBATION OFFICE USE ONLY

Upon a finding of violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed) _____        _____
                    Defendant                                              Date


_____        _____
U. S. Probation Officer/Designated Witness                    Date

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA, ) CASE NO:  CR 02-220(A)-SJO  )
                     Plaintiff,)CRIMINAL
                                )
            vs.)Los Angeles, California
                                )
ALEKSEJUS MARKOVSKIS, ) Thursday, January 17, 2008  )  (1:31
              p.m. to 2:37 p.m.)  Defendant.)


SENTENCING RE GUILTY PLEA TO COUNTS ONE, THREE AND FOUR OF THE
SECOND SUPERSEDING INDICTMENT


BEFORE THE HONORABLE S. JAMES OTERO,
UNITED STATES DISTRICT JUDGE

Appearances:   (See next page)


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

**APPEARANCES:**

**For Plaintiff:**

GEORGE S. CARDONA, ESQ
Acting United States Attorney
THOMAS P. O'BRIEN, ESQ
Assistant United States Attorney
Chief, Criminal Division SUSAN
J. DeWITT, ESQ ROBERT E.
DUGDALE, ESQ KIM MEYER, ESQ
Assistant United States Attorney
312 North Spring Street Los
Angeles, CA 90012

TERRENCE J. BENNETT, ESQ
Terrence J. Bennett Law Offices
P.O. Box 709  Pasadena, CA 91102

Mr. Young

**For Defendant:**

Alex Levoff

Margarita Lopez

Victor P. Cruz

**U.S. Probation:**

**Russian Interpreter:**

**Court Recorder:**

**Deputy Clerk:**

**Transcribed by:**

Exceptional Reporting Services, Inc.
14493 S. Padre Island Drive Suite
A-400 Corpus Christi, TX 78418-5940
361 949-2988

3

**Los Angeles, California; Thursday, January 17, 2008; 1:31 p.m.**

**(Call to Order)**

     **THE CLERK:**    All rise.  This United States District Court, Central District of California, is now in session, the Honorable S. James Otero presiding.

     Thank you, everyone.  Please be seated.

     This is Item Number 1, Case Number CR-02-00220(b)SJO, *The United States of America versus Aleksejus Markovskis*.

     Counsel, please state your appearances.

     **MS. DEWITT:**    Good afternoon, your Honor.  Susan DeWitt on behalf of the Government.  Present at counsel table with me is Robert Dugdale, Kim Meyer, FBI Special Agents Louie Perez and Jim Davidson.

     **THE COURT:**    Good afternoon.

     **MR. BENNETT:**    Good afternoon, your Honor.  Terrence Bennett.  I'm the attorney for Mr. Markovskis.

     **THE COURT:**    Good afternoon.

     Okay.  The matter is here for purposes of sentencing, and the sentencing will take place today with the defendant seated at counsel table with counsel.

     In preparation for today's proceeding the Court has reviewed, read, and considered various documents and pleadings.  I want to make sure that I have everything that has been offered and filed by counsel.  The Court has again reviewed the plea agreement, which was filed back in December of '04.  The Court has also read and considered the Presentence Investigation Report.  The Presentence Investigation Report; my copy did not have a date of disclosure.  I did meet with the probation officer, who informed me that the report was disclosed on November 27th -- on or about November 27th -- to Mr. Bennett, that being 2007.

     The Court has also read and considered a memorandum

4

dated December 11ᵗʰ, '07, from the probation officer to the
Court, which contained data and information removed for
security precautions pursuant to Federal Rules of Criminal
Procedure 32.D.3.  I have been informed by the probation
officer that that report has been made available for the
defendant's review and also for the review by the Government.
I want to make sure that's correct.

          The Court has also read and considered the
confidential letter of recommendation to the Court regarding
sentencing.  I should say that the letter of recommendation was
offered prior -- or prepared and considered by the Court prior
to the Government's motion under 5K.  And the Court has read
and considered the Government's sentencing pleading that was
dated December 28ᵗʰ, '07.  The Government thereafter filed an
amended position pleading, which the Court has also read and
considered.  The amended position pleading was filed simply to
correct certain minor errors contained in the original position
paper, but the Court has considered both.

          Just to summarize the Government's pleading, the
Government agrees with the findings and conclusions in the
Presentence Investigation Report.  The Government offers that
absent a motion by the Government pursuant to 5K, because of
Mr. Markovskis's cooperation, the defendant would face a
sentence of life without the possibility of release pursuant to
statute.

          Now, I have not received any pleading or filing
offered by counsel for the defendant.  I understand -- because
I had my court clerk inquire of whether there was any document
that had been filed the Court had not received.  It's been
reported to me from the clerk of the Court that counsel wishes
to address the Court today, and certainly counsel will be given
an opportunity to address the Court.

          I want to make sure that I've covered all of the
documents.  Was there any document filed by any party that was

5

1   not referenced so far?

2              MS. DEWITT:    No, your Honor.

3              THE COURT:    Defendant?

4              MR. BENNETT:    No, your Honor.

5        (Pause)

6              THE COURT:    Let's cover some housekeeping details
    first.   I referenced a confidential letter of recommendation --

7   I'm sorry -- a confidential memorandum dated December 11th,

8   2007.   The memorandum consists of three pages authored by  Mr.
    Young, the probation officer in the case, which contains

9   certain information not included in the Presentence

10  Investigation Report for security reasons.   Mr. Young has

11  informed me that that document was shared with counsel for the
    defendant and also counsel for the Government.   The Federal

12  Rules of Criminal Procedure make it clear that that information

13  should be given to the defendant and shared with the defendant

14  and also with the Government.   I just want to make sure that
    you have had fair opportunity to receive that document and

15  consider it.

16             Mr. Bennett?

17             MR. BENNETT:    I was allowed to read the document in
    the probation officer's office, your Honor, and, so, I did read

18  it.   I do not have a copy of it.

19             THE COURT:    Okay.   Now, did your client

20  have an  opportunity to review it?

21             MR. BENNETT:    No.

22             THE COURT:    Did the Government review the
    document?  MS. DEWITT:   Yes, your Honor.  We did not review

23  the  confidential letter of recommendation, but I don't think

24  that's  required or is policy.

25             THE COURT:    Yes.   I'm not referring to the
    confidential letter of recommendation.   The document I'm
    referring to right now is the document entitled:   Confidential

6

Memorandum; not to be mistaken with the recommendation that's offered by the probation office in every sentencing.

The memorandum is dated December 11th, 2007, and, Mr. Bennett, you mentioned that you reviewed the report but your client has not.

MR. BENNETT:   Correct.

THE COURT:   Okay.  Then, I think we probably should have the clerk of the Court provide a copy for the defendant so that he could review that three-page document here in open court, just to make sure that he's had fair opportunity to see the contents of that document.

MR. BENNETT:   If that's what the Court desires, that's fine with me, your Honor.

(Pause/The Court confers with the clerk)

THE COURT:   Okay.  The probation officer is Mr. Young.  Could you provide that to --

PROBATION OFFICER:  Yes, I can, your Honor.

THE COURT:   Do you have an extra copy?

(Pause)

THE CLERK:   I'll make a copy for both parties. This is the only copy he has, Judge.

THE COURT:   Okay.  Does the Government need to review the report again?

MS. DEWITT:   I do not, your Honor.

THE COURT:   Okay.  Then, what we'll do is we'll allow the defendant to review the copy provided by the probation officer.  The report will then be returned to the probation officer.  It contains confidential information that has been removed for security reasons.  None of the information contained in this report has been considered by the Court in terms of the sentencing.

**EXCEPTIONAL REPORTING SERVICES, INC**

1

**(Pause)**

2

     **THE COURT:**   This information has been removed to

3

protect the defendant's interests.  I just want to make sure

that he's reviewed it.

4

     **(Pause)**

5

     **MR. BENNETT:**   We're prepared to proceed, your Honor.

6

     **THE COURT:**   Thank you.

7

     **(Pause)**

8

     **THE COURT:**  We'll start with the

Presentence  Investigation Report.

9

     Now, Mr. Markovskis, I notice that when you executed

10

or signed the plea agreement, it was translated for you from

11

English into Russian.  We're not utilizing a -- I don't believe

you're utilizing a Russian interpreter today.  We have a

12

Russian interpreter present just in case one is required.

13

     Do you wish to utilize the services of a

14

Russian  interpreter, sir?

15

     **THE DEFENDANT:** No, your Honor.

16

     **THE COURT:**   Okay.  I understand that you speak

what  has been described to me as "perfect English."  Is that

17

correct?

18

     **THE DEFENDANT:** Yes.

19

     **THE COURT:**   And you learned English while in

20

     custody?  **THE DEFENDANT:** Yes, your Honor.

21

     **(Pause)**

22

     **THE COURT:**   Sir, did you receive a copy of

the  Presentence Investigation Report?

23

     **MR. BENNETT:**   Yes, I did, your Honor.

24

     **THE COURT:**My question is to Mr. Markovskis.

25

     **THE DEFENDANT:** Yes, your Honor.

     **THE COURT:**   And when did you receive it?  Do

8

you  recall the date?

I've been informed that it was approximately  November, 2007.  Does that sound correct?

MR. BENNETT:   Well, that's when I reviewed the report, your Honor, but, to the best of my knowledge, he has not reviewed that report.  I met with him this morning an hour before this hearing, and I did not go over that report with him other than to tell him about its contents and indicate to him that I was satisfied that everything in there was appropriate.

THE COURT:    Okay.  We're going to have to have  counsel speak from the lectern, please.

MR. BENNETT:    Okay.

THE COURT:     Everything is being recorded, and we'll  want to make sure we have a good record.

MR. BENNETT:    Your Honor, I was allowed to meet with my client at 12:30 this morning.  I went over with him the filing by the prosecution, and I discussed with him the contents of the Presentence Report and indicated to him that I was satisfied that it was accurate, but I did not go over it with him in detail.

THE COURT:     Okay.

Mr. Markovskis, have you had an opportunity to read the report yourself?

THE DEFENDANT: No, I haven't had opportunity to read it, but I'm satisfied with my attorney's findings.

THE COURT:     Okay.  I think we need to give Mr. Markovskis an opportunity to review the report.  We can do that here in open court, and then I can further inquire of  Mr. Markovskis as to whether he needs more time to consider the contents before the Court proceeds with sentencing.

So, I'll ask the probation officer if he has another

EXCEPTIONAL REPORTING SERVICES, INC

copy of the report.

       **MS. DEWITT:**   He can review mine, your Honor, if that  would expedite things.

       **MR. BENNETT:**   May I sit with him?

       **THE COURT:**   Yeah, please.  Please.  Yes.  And please  take your time.

    **(Pause)**

    **(The Clerk whispers to probation officer)**

    **(Pause)**

       **THE COURT:**   For the proceedings that are going to take place tomorrow, I want to make sure that counsel for the defendant has had an opportunity to sit with the defendant to review the contents of the Presentence Investigation Report before we start with the proceedings tomorrow.

    **(Pause)**

    **(The Clerk whispers to the**

    **Court)  (Pause)**

       **THE COURT:**   It appears that the defendant along with  counsel have had an opportunity to review the report here in  open court.

       Is that true, Mr. Markovskis?

       **THE DEFENDANT:** Yes, your Honor.

       **THE COURT:**   Now, the rules are clear.  You're entitled to 35 days' receipt of the report prior to sentencing. You, apparently, did not have an opportunity to review the report with your counsel prior to today.  I have been informed by Mr. Bennett here in open court that he reviewed the report and discussed it with you.  You're entitled to 35 days, sir, and you have a right to make a request to continue this matter to another day for purposes of sentencing so that you can fully exercise your right under the Federal Rules of Criminal Procedure.

You can give up that right if you so choose, and we can proceed today, but I would like to emphasize that if you want to exercise that right, feel free. You're not causing any disruption of the Court or a delay. You're entitled to it, and if you want to exercise the right, feel free to do that. So, why don't you discuss it with counsel and then let me know what you want to do.

**(Pause)**

**THE DEFENDANT:** I would like to waive my right, your Honor.

**THE COURT:** And your decision to waive was made after you've had an opportunity to briefly discuss the issue with Mr. Bennett here in the Court; is that correct?

**THE DEFENDANT:** Yes, your Honor.

**THE COURT:** Okay. And counsel joins in the waiver? **MR. BENNETT:** Yes, your Honor.

**(Pause)**

**THE COURT:** In addition, I just want to make sure that the Court obtains a waiver of the 35-day rule regarding the information contained in the confidential memorandum dated December 11th that was also reviewed here in open court by Mr. Markovskis.

Mr. Markovskis, the 35-day rule that I just mentioned would apply to that second document. You've been shown that document here in court and had an opportunity to review it with counsel. Do you give up that right and agree that the Court can continue with sentencing today?

**THE DEFENDANT:** Yes, your Honor.

**THE COURT:** Okay. And does counsel join?

**MR. BENNETT:** Yes, your Honor.

**THE COURT:** I'll start by reviewing the Presentence Investigation Report here in open court. The record reflects, or should reflect, that on December 21st, 2004, Mr. Markovskis pled guilty to Counts One, Three, and Four of a Second Superseding Indictment. He was not named in

1   the other counts  in the Indictment, and the plea was under
2   seal.

3           Count One alleged that during the period ending on
4   February 19th, 2002, in Los Angeles, Mr. Markovskis, along with
    the other named defendants, conspired and with others to seize
5   and detain another person resulting in the death of a victim in
6   violation of Title 18, U.S. Code, Section 1203, hostage taking
    resulting in death.
7
            The victims identified in that Count One included
8   Mr. Umansky, Mr. Muscatel, Ms. Pekler, Nick Kharabadze, and
9   Mr. George Safiev.  The Court notes, however, that  Mr.
    Markovskis was responsible for the seizure, detention, and
10  death of two of the victims and not the others, the victims
11  being Mr. Kharabadze and Mr. Safiev.

12          The defendant also entered a plea to Count Three,
13  which alleged that on January 20th, 2002, Los Angeles County,
    the defendant, along with the other named defendants, seized,
14  detained, and threatened to kill Mr. Nick Kharabadze to obtain
15  ransom money, which resulted in the victim's death, in
16  violation of Title 18, U.S. Code, 1203.

17          And then Count Four, which the defendant entered a
    plea to, alleged that on January 20th in Los Angeles County  Mr.
18  Markovskis, along with the other named defendants, seized,
19  detained, and threatened to kill Mr. George Safiev to obtain
    ransom money, which resulted in the victim's death, in
20  violation of Title 18, U.S. Code, Section 1203.

21          The Court has considered the offense conduct
22  delineated in the Presentence Investigation Report.  Apart from
    that, the Court has reviewed the stipulations which are
23  attached as Exhibit A -- the factual stipulations attached as
24  Exhibit A to the plea agreement; and, then, the Court also
    presided over the trial of Mr. Krylov and considered the
25  Presentence Investigation Report, the stipulations in  Exhibit
    A, and also the evidence offered at trial in assessing  and

determining the offense conduct.

The Court would adopt the findings and conclusions regarding offense conduct as being accurate in reference in the Presentence Investigation Report.  In terms of paragraph 31, the result of Mr. Markovskis's involvement in the offenses, two victims were kidnapped, and the family of one of the victims paid 969,000 in ransom.  That's important because restitution is mandated by the crime of conviction.  There will be a deduction of the restitution order pursuant to the information supplied by the Government in their pleading.

Paragraph 33 references that the defendant has accepted responsibility for his conduct, and the probation  officer has emphasized the defendant has stated that he's  sincerely sorry for his actions and ashamed of what he has  done.

We start this sentencing process by the Court first considering the sentencing guidelines.  The officer has done the calculations in the report.  The officer has determined that the combined adjusted offense level is a 45.

I assume that, Mr. Bennett, that you agree.  Do you have any objection to that finding?

MR. BENNETT:   No.

THE COURT:     With acceptance of responsibility the total offense level is 42.  The Court would adopt that finding and conclusion as being a correct calculation.

And paragraph 62 references, again, that Mr. Markovskis was not involved in the other kidnappings and murders.

The second part of the process is for the Court to consider the defendant's criminal history.  He has no prior criminal convictions that are not related to this case.  There is a pending state court matter resulting out of the same killings that occurred in this case, and the Court is aware of

1   that pending matter and the proposed disposition of that state
2   court matter.   In the state court matter it's my understanding
3   that the defendant will enter a plea -- he's already entered a
    plea; he'll change his plea and the defendant will be sentenced
4   concurrent to any sentence imposed by this court.   That's my
5   understanding of the agreement with the state officials.

6           The Court has considered the defendant's personal and
    family data.   It should be noted that the defendant at the time
7   of the killings was residing in the United States illegally.

8           The Court notes, in particular, paragraph 83, which
9   reflects that the defendant is quite an excellent student.
    According to the information contained here, he tested in the
10  99th percentile in math in August, 2005, while in custody,
11  after completing his requirements for the GED high school
12  equivalency certificate, and he speaks several languages, I
    think four languages, and is currently working on Spanish.
13
            The Court would adopt the finding and conclusion in
14  the PSR regarding financial condition.   The Court will not
15  impose a fine; the defendant doesn't have the ability to pay a
16  fine.

17          The officers determined that the total offense level
    is 42, criminal history category is I.   That will result in a
18  sentencing guideline range of 360 months to life in custody or
19  in prison.   The statute, however, provides for life
    imprisonment without the possibility of release pursuant to
20
            Title 18, 1203, regarding Counts One, Three, and
21  Four.   The  Court has read and considered the other
22  portions of the  Presentence Investigation Report.

23          So, the statute requires the Court to sentence the
    defendant to life without the possibility of release.   The
24  Government has moved, however, for a 5K departure because of
25  the defendant's substantial assistance.

            To summarize the Government's position pleading, the

1    Government, again, if I didn't state it already, concurs with

2    the findings and conclusions in the Presentence Investigation

3    Report, believes that the offense level is 42 as calculated,

     criminal history category I.  The Government moves, however,

4    pursuant to 5K.1 to a 12-level reduction.  A 12-level reduction

5    would move the defendant from an offense level of 42 to a

6    criminal history category of 30.  That would place him in a

     sentencing range of 97 to 121 months.  The Government moves the

7    Court for a sentence of a hundred months and has detailed in

8    its pleading with specificity the reasons for the 12-level

9    reduction, which the Court has carefully considered.

10         In particular, the Government believes that the

     significance and usefulness of the defendant's cooperation is a

11   major factor that should result in a 12-level reduction.  The

12   Government believes that the defendant's cooperation has placed

     him in significant danger.  Based on my understanding of what

13   I've learned from this case, I certainly have no reason to

14         believe that that is not the case.  It would

15   seem that the  defendant has placed himself in danger.

16         The Government also has referenced that the

     information provided by Mr. Markovskis has been truthful and

17   reliable and useful in the prosecution of the other three

18   defendants, Mr. Krylov before me, and then Mr. Mikhel and  Mr.

19   Kadamovas before Judge Tevrizian, and the defendant did

     testify on two occasions, and then the Government has also

20   referenced that the defendant, Mr. Markovskis, timely

21   cooperated, and the Government believes that these factors cut

22   in favor of a significant departure from either the guideline

     calculation or the statute mandating life without the

23   possibility of release.

24         I think that pretty much summarizes the Government's

25   position pleading.

           Let me hear from Mr. Bennett.  Mr. Bennett, do you

**EXCEPTIONAL REPORTING SERVICES, INC**

have -- may I have you go to the lectern, please.

First of all, in reference to the Presentence Investigation Report, do you have any objections to the report?

MR. BENNETT:   No.

THE COURT:     And do you have any comments or anything you would want to add in reference to the Presentence Investigation Report?

MR. BENNETT:   As far as the Presentence Investigation Report, I believe it's factually accurate, your Honor.

THE COURT:     Okay.

MR. BENNETT:   I have no objection to it.

THE COURT:     And, then, in reference to that second document, the memorandum that contains certain confidential information, do you have any objections to any of the information contained therein or any statements regarding that second document?

MR. BENNETT:   It's essentially accurate.  I did see a reference of excessive alcohol consumption, your Honor, and I did have the opportunity to review a videotape of Mr. Markovskis's wedding, and in that videotape in Lithuania, it's the custom at the wedding for parties to approach the wedding couple and present a gift, and then the wedding couple and the guest then consume a shot of vodka.  And I watched as a lot of people consumed a whole lot of vodka.  I think the claim that he was an excessive alcohol user is somewhat justified by that, but other than that, since he's been in this country, I don't think excessive alcohol has been a problem of Mr. Markovskis's, so I just wanted to make that clarification. With that exception, there is no other factual objections to what I've read.

THE COURT:     I should offer that I also met with the probation officer in chambers prior to the commencement of

16

this  afternoon's proceedings, and that was the information
that I  received from the probation officer.  The probation
officer did  not believe that there was a substance abuse
problem or alcohol  issue, and, therefore, there was no
recommendation regarding  drug or alcohol conditions on any
supervised release that would  be imposed.

MR. BENNETT:   I think that's appropriate, your
Honor.   In my experience with this man over the last four or
five  years, I have never gotten any information from anyone
that  would lead me to believe the had a substance abuse
problem,  other than the fact that in Lithuania, apparently
consumption  of alcohol is more liberal than it is here.

THE COURT:     There are many cultures who share
that.  And do you have any other statements you would like  to
make at this time?  I'm certainly going to hear from the
Government and give your client an opportunity to address the
Court if he so chooses.

MR. BENNETT:   Well, as I informed the Court, I do
agree with the Government's sentencing position and their
recommendation and request and the facts upon which it is
based.  I would point out to the Court that my client at the
beginning of this matter, before he was indicted, gave a
complete factual layout of the events of this case, and after
the full investigation and hundreds and thousands of pages and
a lot of good lawyers taking a look at it and trying to punch
holes in it, I think it's fair to say that the statement he
gave before he was indicted has proven to be factually accurate
 and complete.  And I think Mr. Markovskis has done everything
he can to show his remorse by his cooperation.  He's put not
only himself but his wife and his young child in great danger.
Because of the situation he's in, he has been unable to have
any direct contact with his wife, his mother, or his now, I
think, eight-year-old daughter, since that time, and I think
he's paid a heavy price already for his bad decision here, and

1    I think he's done everything that any human being could to
2    remedy as best he could his mistakes and his criminality, and I
3    think he deserves just what the Government is recommending, and
     I join and endorse the Government's position.  And that's all I
4    have to say, your Honor.

5              THE COURT:     Thank you.

6              MR. BENNETT:    Thank you, your Honor.

7              THE COURT:Does the Government wish to be heard?

8              MS. DEWITT:    No, your Honor.

9              THE COURT:     Mr. Markovskis -- well, first of all,
     before we get to the defendant's statement, the rules provide
10   an opportunity for family members of the two victims, if there
11   are any family members of the two victims present in court --
     is there anyone, any family member related to Mr. Safiev?
12
13        (No audible response)

              THE COURT:No?  No victim family members here.
14
              MS. DEWITT:    I don't believe that the family
15   members  for Mr. Kharabadze or Mr. Safiev are present today,
     your Honor.
16
17             THE COURT:     Okay.  So, no victim witness
     statements  or family statements.
18
              We move to the defendant.  Mr. Markovskis, you have
19   the opportunity to make a statement to the Court if you so
20   choose.  You're not required to make a statement; if you want
     to, please feel free to do that.
21
              THE DEFENDANT: Your Honor, I've been thinking for
22   several years about today, and I actually don't know how to say
23   how I feel about all of the events that happened and the pain
     that I caused to people, and even though the family members of
24   the victims are not here, I'd still like to apologize to
25   anybody who I caused harm, pain, and suffering.  I'm sorry for
     what I've done.  I don't know how to express it better.

THE COURT:      Thank you.  Anything else?

THE DEFENDANT: No, your Honor.

(Pause)

THE COURT:      In sentencing defendant, the Court is required not only to consider the guideline or sentencing factors, the Court is required also to consider each of the factors enumerated in Title 18, 3553, which include the requirement that the Court impose a sentence that reflects the seriousness of the offense.  And it's difficult to consider or view another offense that could be more serious than the offense committed here.

The Court must impose a sentence to afford adequate  deterrence to criminal conduct, and I interpret that to include  specific deterrence in reference to further conduct by the  defendant and also to make sure that the message is sent that  serious criminal offenses will be treated seriously and  adequate deterrence and sentence imposed to deter other similar conduct.

The Court must impose a sentence to protect the  public from further crimes of the defendant.

The Court must impose a sentence that takes into consideration needed vocational and educational training, and it appears that the defendant has taken advantage of that already and will in custody.

The Court must consider the kinds of sentences available and the need to avoid sentence disparities.

Mr. Krylov, obviously, was sentenced to life without the possibility of relief, and Mr. Kadamovas and Mr. Mikhel received a death sentence as imposed by the jury.

I've tried to consider all of the information that has been given the Court in terms of the defendant's conduct: the information contained in the Presentence Investigation Report, the stipulations offered in Exhibit A to the plea, the Government's pleading regarding the defendant's conduct, and this Court's review of the record regarding the evidence that

was offered at trial, and the defendant's conduct can be summarized, I think, as follows.

Mr. Markovskis, together with Mr. Mikhel, Kadamovas, Mr. Altmanis, Krylov, and Solovyeva, conspired in a scheme to lure Mr. Kharabadze and Mr. Safiev to a location, which was identified in the pleadings and at trial as the Designed Water World location.  At that location Mr. Markovskis, along with the other defendants, not Solovyeva, seized, cuffed, and held hostage Mr. Kharabadze and Mr. Safiev.  Thereafter  Mr. Markovskis, along with the other co-conspirators -- again,  not Ms. Solovyeva -- forcefully transported the two victims  from the Designed Water World location to the Weslin Avenue location in Sherman Oaks that was Mr. Kadamovas's home, which was used to hold the victims hostage and captive.

At that Weslin, Sherman Oaks, home, it appears that Mr. Markovskis also assisted the other co-conspirators by purchasing plastic ties.  The plastic ties were used to bound the victims and also used to tie the weights around the victims when their bodies were disposed of in the New Melones Reservoir.  He also assisted the co-conspirators by purchasing various supplies so that the victims could be held hostage at that location and kept captive while ransom demands were being made.

Mr. Markovskis provided additional assistance by staying at the Weslin Avenue location.  He stayed there for the purpose of guarding the victims and for the purpose of making sure that they could not escape or flee, and he used a firearm

provided by Mr. Mikhel to forcibly keep the victims at the  location.

And it is clear the defendant claims -- and I think this is significant -- the defendant claims that when he first entered into the scheme, he was not aware that the victims would be killed.  However, it is clear from the evidence at

trial, from the stipulations in Exhibit A, the factual
stipulations, that at the Weslin location the defendant learned
that Mr. Kharabadze and Mr. Safiev would be killed and that
their bodies would be dumped off the bridge into the  reservoir
-- I'm not sure he knew precisely the reservoir -- so  that
they could not be found.  At that location, at the Weslin
location, in his conversation with Mr. Kadamovas, he also
learned that there had been another victim -- at least one
other victim -- killed: Mr. Muscatel.  And, so, Mr. Markovskis
knew what would occur in reference to these victims but did
nothing to prevent it or help.

      After the victims were killed -- and it should be
mentioned, and I think this is important in terms of the
appropriate sentence -- this defendant did not directly
participate in the murders of the two victims.  But after the
victims were murdered and after their bodies were disposed of,
the defendant continued to help and assist others by going back
to the Weslin Avenue location to clean that location so as to
eliminate any evidence of the victims' presence at that
location.  The defendant also assisted others in helping to
remove evidence from the vehicles used to transport the victims
from Weslin Avenue to the New Melones Reservoir.

      After all of this occurred, the defendant received a
wire transfer in the sum of $15,000 deposited to his account.
At trial, at the trial of Mr. Krylov, as I recall,  Mr.
Markovskis referenced that he almost felt obligated to  accept
the money.  He was concerned about his own safety if he  did
not accept the $15,000, because if he did not accept it,  Mr.
Mikhel and Mr. Kadamovas could become suspicious of him and
cause harm to either himself or his family.

      So, the Court is left with the task -- the Court is
going to grant the 5K motion.  The defendant qualifies under
the statute for a departure.  The question is really the
appropriate sentence, and the Court must impose a sentence that

takes into consideration the defendant's cooperation and the policies to be achieved under 5K, but the Court must also take into consideration the sentencing factors enumerated in 3553.

In determining the appropriate sentence, the Court has considered that the defendant is not the mastermind, was not the organizer, as pointed out by the Government; did not directly murder the two victims.  That is a significant factor. His participation in the scheme was limited to the two victims,  and his involvement was for a short period of time. I believe  from the time this first occurred to the time it was concluded
it was approximately three days.

**(Pause)**

THE COURT:     So, the Court will grant the motion. Before I sentence the defendant, is there any legal reason why the defendant should not now be sentenced?

MR. BENNETT:    No, your Honor.

THE COURT:     Government?

MS. DEWITT:    No, your Honor.

THE COURT:     In sentencing the defendant I tried to calculate precisely what the effect of the Government's recommendation would be, the immediate effect of the Government's recommendation would be.  The Government has recommended a hundred months.  Assuming that the defendant is able -- qualifies for credits provided by the Bureau of Prisons, he would serve 85 percent of that time.  The defendant would serve only 7.1 years -- I'm sorry -- 7 years and one month.  The defendant would, because he has been in custody since 2002, would be released in approximately a year or so. And that hardly seems to be a sentence that should be imposed because of the seriousness of the offense.

When I first started the process, I was inclined to sentence the defendant to more time than what the Court will

sentence the defendant to.  But I was convinced, after reviewing all of the documents and considering the evidence offered at trial, of an important fact, in that this defendant was -- I believe that this defendant was not aware when he first started to engage in the scheme that the victims would be killed.  I accept that.  If the Court did not come to that conclusion, the sentence would be very different.

I also tried to consider what other people would do in a situation faced by the defendant where they start in a scheme to hold hostage and then realize that somebody would be killed, and the persons involved in that scheme would be very dangerous people, and I accept Mr. Markovskis's statements made at trial that he had fear for his life once he became involved.  So, I accept that also.

That being said, the defendant was in a position to assist and help the victims, and he knew precisely how the victims would be killed based on the information provided by Mr. Kadamovas regarding the story he told Mr. Markovskis concerning Mr. Muscatel and how Mr. Muscatel suffered and died.  And he knew the fate that the victims faced.

What I was not able to determine is whether this defendant would have continued to participate in a scheme to kidnap and kill other victims.  I've come to the conclusion that there is no evidence in the record to support a claim that he would have continued to participate, so I'm assuming that his conduct would have ended with these two murders.  If the Court concluded that he would have continued, then the sentence would be very different.

All of this being said, the Court having considered the factors enumerated in Title 18, 3553, the Court seriously considering the import of the defendant's cooperation -- and let me just make one comment about the defendant's cooperation.  It is clear to this Court that the defendant cooperated for one reason, and that is to save him from a life sentence in

custody.  He didn't do it out of concern for the victims; he
did it to save himself, and that's the primary motivation.  He
cooperated only after Mr. Altmanis informed the FBI that  Mr.
Markovskis was involved.  At the time he cooperated he
seemingly knew, based on the evidence I have, that the FBI or
the police agencies were closing in on the conspirators.  He
had a conversation with Ms. Solovyeva which alerted him before
he was arrested.  He was picked up on a immigration detention,
and he knew at that time that there was a good likelihood he
would be indicted.

          And, so, he made the right decision, and that was to
cooperate.  And he was very fortunate in making that decision,
which is probably consistent with his IQ, because he appears to
be a very smart person; so, he made a wise, smart decision.
But, again, for purposes of sentencing, the Court didn't come
to the conclusion that he did it because he felt guilty for
what he did.  I'm sure he feels that way now, but he did it
primarily to assist himself.

          So, the Court having considered all of the factors I
     enumerated in 3553, the Court also recognizing that the
     mandatory minimum sentence is life, the Court will grant the
     motion made by the Government under 5K1.1.  The defendant is
                                        sentenced as follows:

          It is ordered that the defendant shall pay the United
States a special assessment of $200, which is due immediately.
It is ordered that the defendant shall pay restitution pursuant
to Title 18, U.S. Code, 3663.  Due to the offsets and asset
forfeitures, the amount of restitution is reduced from 969,000
to $710,245.

          Restitution shall be made during the period of
imprisonment at the rate of not less than $25 per quarter and
pursuant to the Bureau of Prisons inmate financial
responsibility program.  If any amount of restitution remains
unpaid after release from custody, nominal monthly payments of
at least $50 shall be made during the period of supervised

release.  These payments shall begin 30 days after the commencement of supervision.  Nominal restitution payments are ordered as the Court finds that the defendant's economic circumstances do not allow for either immediate or future payments in other amounts.

The defendant shall be held jointly liable and severably liable with co-participants, Mr. Mikhel, Kadamovas, Krylov, Solovyeva, Altmanis, for the amount of restitution ordered by the Court.

Pursuant to Title 18, United States Code, 3612(f)(3)(A), interest on the restitution is waived. The  defendant does not have the ability to pay interest.

The payments may be subject to penalties for default, delinquency, pursuant to Title 18, 3612(g).

The defendant shall comply with General Order 01-05. All fines are waived as it is found that the defendant does not have the ability to pay fines.

Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant, Mr. Markovskis, is committed on Counts One, Three, and Four of the Second Superseding Indictment to the custody of Bureau of Prisons to be imprisoned for a term of 180 months.  The term consists of 180 months in Counts One, Three, and Four to be served concurrently.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of five years.  The term consists of five years on each of Counts One, Three, and Four to be served concurrently under the following terms and conditions:

The defendant shall not commit any violation of a  local, state, or federal law.

The defendant shall comply with the rules and

1    regulations of the U.S. Probation Office's General Order 318.

2           During the period of community supervision the
     defendant shall pay the special assessment and restitutions in
3    accordance with the judgments and orders of the Court.

4           The defendant shall comply with the immigration rules
     and regulations of the United States if deported from this
5    country either voluntarily or involuntarily and not reenter the
6    United States illegally.

7           The defendant is not required to report to the
     probation office while residing outside the United States;
8    however, within 72 hours of release from any custody or reentry
9    into the United States during the period of Court-ordered
10   supervision, the defendant shall report for instructions to the
     U.S. Probation Office located at 312 North Spring Street,  Room
11   600.

12          The defendant shall cooperate in a DNA sample,
13   as  required by statute.

14          The defendant shall apply monies received from income
     tax refunds, lottery winnings, inheritance, judgments, and any
15   anticipated or unexpected financial gains to the outstanding
16   Court-ordered financial obligation.

17          In sentencing the defendant to 180 months, the Court
     has determined that the appropriate departure is not 12 levels,
18   as moved for by the Government, but 7 would make the
19   defendant's offense level 35; the guideline range is 168 to 210
20   months.  The Court has imposed 180 months.  In the Court's
     view, the 180 months is the appropriate sentence to achieve
21
22          both the policy advanced in 5K and also
     under 3553.  It  reflects a balance of the two.

23          As I calculate the 180 months with the defendant's
24   credit for time that would be imposed by the Bureau of Prisons,
     the defendant would serve far less than 180 months and would be
25   released at the age of approximately 41 or 42.  The defendant
     would have, according to the actuarial tables, a life

expectancy of approximately 38 more years, 38 years which the victims would never see.

The Court must advise the defendant of his right to appeal.  He has the right to appeal the sentence if he believes the sentence is contrary to the plea agreement, contrary to law, or for any other reason is inappropriate.  The right to appeal:  The notice of appeal must be filed within ten days from today's date.  With few exceptions the notice must be filed within that ten-day period.  If the defendant requests, the clerk of the Court will prepare and file a Notice of Appeal on his behalf.  The defendant also has a right to seek a waiver of any costs regarding his appeal.

MS. DEWITT:     Excuse me, your Honor.  In that plea agreement with Mr. Markovskis there is a waiver of appeal, and if you'd like, for the record, I could just read it into the --

THE COURT:     Please.

MS. DEWITT:     "The defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution and the manner in which the sentence is determined provided that the sentence is within the statutory maximum specified above and is constitutional.  Defendant also gives up the right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly-discovered evidence, or an explicitly retroactive change in the applicable sentencing guidelines, sentencing statutes, or statutes of conviction.  The United States Attorney's Office also gives up its right to appeal the Court's sentencing guideline calculations provided that the Court does not depart downward from the criminal history category and the sentence imposed is constitutional."

THE COURT:     It would appear that the sentence imposed by the Court is consistent with the plea agreement,

1    but that's  for the defendant to determine along with counsel.

2              Just a couple more comments.  I sat through that,

3    through Mr. Krylov's trial.  The investigation by the FBI, the

     Internal Revenue Service, was phenomenal, in the Court's view.

4    It's hard to think of what would continue to occur but for that

5    investigation.  The defendants were apprehended also because of

6    other information supplied by other cooperating defendants.

     The prosecution by the Government was as good as it gets, and I

7    just wanted to say that for the record.  But for the service of

8

9              the U.S. Attorney and the FBI and the Internal

10   Revenue, the  persons responsible for these horrible

     murders would still   continue.

11             Thank you very much.

12             **MR. BENNETT:**   Thank you, your Honor.

13             **THE CLERK:**    Court's in recess.

14        **(This proceeding was adjourned at 2:37 p.m.)**

15

16

17

18

19

20

21

22

23

24

25

28

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____

**Signed**

**January 18, 2008**

**Dated**


*TONI HUDSON, TRANSCRIBER*